IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARRMON H. DAUGHERTY, | ) | 4:12CV3133 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ARMSTRONG, SGT, 1257, | ) | |
| DENZIN, OFC., 1622, HOSE, OFC., | ) | |
| 1606, SMITH, OFC., 826, VIGIL, | ) | |
| OFC., 1570, and CITY OF | ) | |
| LINCOLN, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed his Complaint in this matter on June 29, 2012. (Filing No. 1.) Plaintiff has previously been given leave to proceed in forma pauperis. (Filing No. 6.) Also pending is Plaintiff's Motion for Refund of Initial Partial Filing Fee. (Filing No. 7.) The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

I.  **SUMMARY OF COMPLAINT**

Plaintiff filed his Complaint on June 29, 2012, against the City of Lincoln, Nebraska, and several individual officers of the Lincoln Police Department ("LPD"). (Filing No. 1 at CM/ECF p. 1.) Plaintiff sues each of the individual officers in both their individual and official capacities. (*Id*.) Plaintiff is currently confined at the United States Penitentiary in Leavenworth, Kansas. (*Id*. at CM/ECF p. 2; *see also* Docket Sheet.)

Condensed and summarized, Plaintiff alleges that on August 23, 2009, he was driving a vehicle at speeds up to 60 miles per hour while being pursued by the LPD. (Filing No. 1 at CM/ECF p. 5.) During the pursuit, Plaintiff hit a light pole, exited the

vehicle, and ran approximately ten yards before he fell to the ground unconscious. (*Id.*) Plaintiff asserts that he sustained a minor concussion and lost feeling in his limbs. (*Id.* at CM/ECF pp. 8-9.)

After Plaintiff fell, Officer Denzin ("Denzin") took him into custody. (*Id.*) Plaintiff informed Denzin that he needed medical attention, but Denzin refused to seek or provide it for him. (*Id.* at CM/ECF pp. 5-6.) Shortly thereafter, Officer Hose ("Hose") joined Denzin. (*Id.* at CM/ECF p. 6.) Plaintiff also informed Hose that he needed medical attention, but Hose refused to seek or provide it for him. (*Id.*) Although Denzin and Hose refused to provide Plaintiff with medical attention, Officer Virgil immediately sought medical attention for Plaintiff's passenger. (*Id.*)

Plaintiff seeks $18,500.00 in compensatory damages and $18,500.00 in punitive damages against each Defendant. He also asks for any additional relief this court deems just, proper, and equitable. (*Id.* at CM/ECF p. 13.)

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

A pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct.

1937, 1950 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

### III. DISCUSSION OF CLAIMS

#### *A. Fourteenth Amendment Claims Against Denzin and Hose*

The court liberally construes Plaintiff's Complaint to allege a Fourteenth Amendment claim relating to denial of medical treatment. At the time of the alleged constitutional violation, Plaintiff was a pretrial detainee. Pretrial detainees' rights arise under the due process clause of the Fourteenth Amendment. *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999), *cert. denied*, 528 U.S. 1157 (2000). Although a pretrial detainee's claim for the denial of medical care is brought under the due process clause, such claims are analyzed in much the same way as a prisoner's Eighth Amendment claim of deliberate indifference to a serious medical need. *Id*. Under the Eighth Amendment, a prisoner-plaintiff seeking relief for claims relating to his medical care must allege that a defendant-prison official was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Further, a plaintiff must allege that he had objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn*, 491 F.3d 394, 396–97 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 972–73 (8th Cir. 2006). "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate

3

indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. (citing *Estelle*, 429 U.S. at 103–04).

When liberally construed, Plaintiff has alleged that his injures were serious. *Harris v. Nielsen*, No. 09–2982 (RBK/AMD), 2010 WL 2521434, at *7 (D.N.J. June 15, 2010) (assuming, without deciding, that plaintiff's potential concussion constitutes a serious medical need sufficient to satisfy the objective element of an Eighth Amendment claim). Plaintiff also alleges that he asked Denzin and Hose for medical attention and they ignored his requests. (Filing No. 1 at CM/ECF pp. 5-6.) Thus, Denzin and Hose allegedly were aware of Plaintiff's injuries, but they deliberately disregarded them. (*Id*. at CM/ECF pp. 5-6.) Accordingly, Plaintiff has nudged his Fourteenth Amendment Claims against Denzin and Hose across the line from conceivable to plausible. However, the court cautions Plaintiff that this is only a preliminary determination based on the allegations of the Complaint and is not a determination of the merits of his claims or potential defenses thereto.

### B. *Fourteenth Amendment Claims Against the City of Lincoln*

As a municipality, the City of Lincoln can be liable for a § 1983 claim only if a municipal "policy or custom" caused a plaintiff to be deprived of a federal right. *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 450 (2010); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

To establish the existence of a governmental custom, a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff alleges that the City of Lincoln was aware of a "continuing, wide spread, persistent pattern of" LPD officers not providing medical care to detainees after care was requested. (Filing No. 1 at CM/ECF p. 5.) Plaintiff also alleges the City of Lincoln's policies "on fresh pursutes [sic] of motor vehicles," investigating car accidents and training officers were the "moving force[s] behind" his injuries. (*Id*. at CM/ECF p. 5.) Liberally construed, Plaintiff has alleged enough to nudge his Fourteenth Amendment claims against the City of Lincoln across the line from conceivable to plausible. Again, the court cautions Plaintiff that this is only a preliminary determination based on the allegations of the Complaint and is not a determination of the merits of his claims or potential defenses thereto.

    C.    *Fourteenth Amendment Claims Against Armstrong*

Plaintiff alleges that Officer Armstrong is liable for his inferior officers' actions. (*Id*. at CM/ECF pp. 8, 10.) However, as a general rule, an individual cannot be liable under section 1983 unless he or she personally participated the alleged violation. See *Iqbal*, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Indeed,

the Eighth Circuit has held that "a supervising officer can be liable for an inferior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'" *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)). To show that Armstrong violated Plaintiff's rights by failing to supervise or train, he must show that Armstrong:

> 1)   Received notice of a pattern of unconstitutional acts committed by subordinates;
>
> 2)   Demonstrated deliberate indifference to or tacit authorization of the offensive acts;
>
> 3)   Failed to take sufficient remedial action; and
>
> 4)   That such failure proximately caused injury to [Plaintiff].

*Otey*, 121 F.3d at 1155.

Here, Plaintiff alleges Armstrong failed to "ensure that training was being carried out." (Filing No. 1 at CM/ECF p. 10.) However, he fails to allege that Armstrong had notice of a pattern of unconstitutional conduct by his subordinates, demonstrated deliberate indifference to or tacit authorization of such conduct, or failed to take sufficient remedial action. Without such information, Plaintiff has failed to nudge his Fourteenth Amendment claims against Armstrong across the line from conceivable to plausible.

However, on its own motion, the court will provide Plaintiff with the opportunity to amend his Complaint to sufficiently allege a claim against Armstrong. Any amended complaint shall restate the allegations of Plaintiff's current Complaint (filing no. 1), and any new allegations. Failure to consolidate all claims into one

document will result in the abandonment of claims. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, Plaintiff's Fourteenth Amendment claims against Armstrong will be dismissed without further notice.

### D.     *Fourteenth Amendment Claims Against Smith and Vigil*

Plaintiff alleges claims against Officers Smith and Vigil. (Filing No. 1 at CM/ECF p. 11.) However, there are no allegations that either knew of Plaintiff's condition and acted with deliberate indifference to deny him medical care. Consequently, Plaintiff's Complaint fails to state a Fourteenth Amendment claim upon which relief may be granted against Smith and Vigil. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (concluding that a complaint was properly dismissed because plaintiff failed to allege facts supporting any individual defendant's personal involvement or responsibility for violations); *see also Iqbal*, 129 S. Ct. at 1950 (stating that a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

However, as with Plaintiff's claims against Armstrong, the court will provide Plaintiff with the opportunity to amend his Complaint to sufficiently allege a claim against Smith and Vigil. Any amended complaint shall restate the allegations of Plaintiff's current Complaint (filing no. 1), and any new allegations. Failure to consolidate all claims into one document will result in the abandonment of claims. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, Plaintiff's claims against Smith and Vigil will be dismissed without further notice.

### E.     *State Law Claims*

Plaintiff may also have claims for violations of state law, such as negligence. Pending amendment, as set forth in this Memorandum and Order, the court may choose to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

## IV. MOTION FOR REFUND OF FILING FEES

Also pending is Plaintiff's Motion for Refund. (Filing No. 7.) In this Motion, Plaintiff states that he paid the court-assessed $33.99 initial partial filing fee twice in this matter. (*Id*. at CM/ECF pp. 1-2; *see also* Docket Sheet.) Plaintiff argues that he should not have to pay two initial partial filing fees and asks the court to issue a refund of $33.99. (Filing No. 7 at CM/ECF p. 1.)

The court's review of the docket sheet reveals that it received an initial partial filing fee in the amount of $33.99 on July 30, 2012. (*See* Docket Sheet.) Subsequently, on August 6, 2012, the court received another partial filing fee payment in the amount of $33.99. (*Id*.) The court's July 6, 2012, Memorandum and Order specifically provides that after payment of the initial partial filing fee:

> the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(Filing No. 6 at CM/ECF p. 2.) Plaintiff's trust account statement shows that his institution withdrew an "Initial PLRA" payment on July 31, 2012. (Filing No. 7 at CM/ECF p. 2.) This occurred after the court had already received the initial partial filing fee in this matter. (*See* Docket Sheet.)

In light of these findings, the court finds that Plaintiff was assessed the initial partial filing fee twice, and he is entitled to a refund of $33.99. The remainder of Plaintiff's filing fee in this matter shall be collected pursuant to procedures set forth in the court's July 6, 2012, Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Refund of Initial Partial Filing Fee (filing no. 7) is granted.

2. The Clerk of the court is directed to refund $33.99 to Plaintiff. The remainder of Plaintiff's filing fee in this matter shall be collected pursuant to procedures set forth in the court's July 6, 2012, Memorandum and Order.

3. The Clerk of the court is directed to send a copy of this Memorandum and Order to Plaintiff's institution.

4. Plaintiff shall have until **October 8, 2012**, to amend his Complaint and clearly state a claim upon which relief may be granted against Armstrong, Smith, and Vigil in accordance with this Memorandum and Order. If Plaintiff fails to file an amended complaint, Plaintiff's Fourteenth Amendment claims against Armstrong, Smith, and Vigil will be dismissed without further notice for failure to state a claim upon which relief may be granted.

5. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the current Complaint (filing no. 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.

6. The Clerk of the court is directed to set a pro se case management deadline in this case using the following text: Check for amended complaint on **October 8, 2012**.

7. Plaintiff shall keep the court informed of his current address at all times while this case is pending. **Failure to do so may result in dismissal without further notice.**

DATED this 7th day of September, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.