IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARRMON H. DAUGHERTY, | ) | 4:12CV3133 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DENZIN, OFC., 1622, HOSE, OFC., | ) | |
| 1606, and CITY OF LINCOLN, | ) | |
| | ) | |
| Defendants. | ) | |

    This matter is before the court on several Motions and Objections filed by the Parties. (Filing Nos. 50, 67, 72, 79, 81, 82, and 84.) As set forth below, the court will grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

## I.  BACKGROUND

    On June 12, 2012, Plaintiff filed the Complaint in this matter against the City of Lincoln, Nebraska ("City"), and several individual officers of the Lincoln Police Department ("LPD"). (Filing No. 1 at CM/ECF p. 1.) Plaintiff sued each of the individual LPD officers in both their individual and official capacities. (*Id*.) On September 7, 2012, the court conducted an initial review of Plaintiff's Complaint and concluded that it failed to state a claim against several of the individual officers. (Filing No. 8 at CM/ECF p. 9.) However, the court also provided Plaintiff with the opportunity to amend his complaint by October 8, 2012. (*Id*.)

    Plaintiff failed to amend by the court's deadline and the court dismissed Plaintiff's claims against Defendants Armstrong, Smith, and Vigil. (Filing No. 9.) However, the court permitted Plaintiff's Fourteenth Amendment claims relating to the

denial of medical treatment and his state law negligence claims to proceed against Defendants Denzin, Hose, and the City. (Filing No. 9; *see also* Filing No. 8.)

On April 22, 2013, Plaintiff filed a Motion for Summary Judgment. (Filing No. 50.) Because discovery was still ongoing, Defendants asked the court to extend their response time. (*See* Filing Nos. 47, 54 and 59.) The court extended the time for Defendants to file a response until August 19, 2013. (Filing No. 60.)

On July 22, 2013, Plaintiff filed a Motion to Compel along with a Brief and an Index of Evidence in Support. (Filing Nos. 67, 68, and 69.) On August 19, 2013, Defendants filed a Motion for Summary Judgment along with a Brief and Index of Evidence in Support. (Filing Nos. 72, 73, and 74.) Defendants' Brief included a Response to Plaintiff's previously filed Motion for Summary Judgment. (Filing No. 74 at CM/ECF p. 29.) Thereafter, Plaintiff moved to extend the time to respond to Defendants' Motion for Summary Judgment. (Filing No. 75.) The court granted Plaintiff's request and gave him until October 21, 2013, to file a response. (Filing No. 76.)

On October 25, 2013, Plaintiff filed an Objection and Brief in Opposition to Defendants' Motion for Summary Judgment along with an Index of Evidence. (Filing Nos. 79 and 80.) On November 4, 2013, Defendants filed an Objection to Plaintiff's Brief and Index arguing he filed them late and that they contained unauthenticated declarations and statements. (Filing No. 81.) On November 18, 2013, Plaintiff filed a Motion to Strike Defendants' Objection to his Brief arguing it was not filed within seven days of his Objection and Brief in Opposition. (Filing No. 82.) Thereafter, Plaintiff also filed a Motion for Leave to Supplement Evidence. (Filing No. 84.) Defendants have objected to Plaintiff's Motion arguing that his new evidence is also improperly authenticated. (Filing No. 86.)

## II. ANALYSIS

Before the court addresses the pending Motions for Summary Judgment, it must resolve Plaintiff's Motion to Compel, the Parties' Objections to briefs and evidence submitted in support of their Motions for Summary Judgment, and Plaintiff's request to supplement evidence.

### A.    Motion to Compel

On July 22, 2013, Plaintiff filed a Motion to Compel along with a Brief in Support. (Filing Nos. 67 and 68.) In his Brief, Plaintiff expresses his dissatisfaction with Defendants' answers to his requests for admission and asks the court to compel different answers. (*Id*.) The court has reviewed Defendants' answers and finds that they comply with Fed. R. Civ. P. 36(a)(4). Accordingly, Plaintiff's Motion to Compel is denied.

### B.    Objections to Evidence

As discussed above, Plaintiff filed an Objection and Brief in Opposition to Defendants' Motion for Summary Judgment along with an Index of Evidence. (Filing Nos. 79 and 80.) Defendants have filed an Objection to Plaintiff's Brief and Index arguing he filed them late and they contain unauthenticated declarations and statements. (Filing No. 81.) Plaintiff argues that the court should strike Defendants' Objection because it was not filed within seven days of his Objection and Brief in Opposition. (Filing No. 82.)

Plaintiff was required to file his brief in opposition by October 21, 2013. (Filing No. 76.) Plaintiff failed to file his Objection and Brief in Opposition until October 25, 2013. (Filing No. 79.) However, Plaintiff deposited the Objection and Brief in Opposition into the prison mail on October 21, 2013. (*See* Filing No. 79 at

CM/ECF p. 25.) Because Plaintiff is proceeding pro se, the court will permit his late filing. However, the court warns Plaintiff that he must comply with the court's orders and the Federal Rules of Civil Procedure. Plaintiff needs to mindful to send mail so that it is *received* by an established deadline. To the extent that Defendants ask the court to strike Plaintiff's Objection and Brief in Opposition, their Objection (filing no. 81) is denied. To the extent that Defendants ask the court to strike unauthenticated evidence, their Objection is also denied. Indeed, requests to strike are viewed with disfavor and infrequently granted. *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). The court will consider Plaintiff's filings in accordance with the Federal Rules of Civil Procedure and Evidence, as well as the summary judgment standards set forth in Part II.D.ii below.

Plaintiff asks the court to strike Defendants' Objection. (Filing No. 82.) Again, requests to strike are viewed with disfavor and infrequently granted. *Lunsford*, 570 F.2d at 229. Moreover, the court has already denied Defendants' Objection to the extent Defendants asked to strike Plaintiff's Objection and Brief in Opposition, or portions thereof. Plaintiff's Motion to Strike is therefore denied.

C.   **Motion for Leave to Supplement Evidence**

Plaintiff also filed a Motion for Leave to Supplement Evidence. (Filing No. 84.) In the Motion, Plaintiff argues that he is "pro se" and did not know that he needed to provide authenticated evidence with his October 25, 2013, Brief. (*Id*.) Plaintiff has filed an Index of Evidence that corresponds to his request. (Filing No. 85.) Defendants have filed a Brief in Opposition to Plaintiff's Motion arguing that his new evidence is also improperly authenticated. (Filing No. 86.)

The court will grant Plaintiff's Motion for Leave to Supplement Evidence (filing no. 84) and consider his Index of Evidence (filing no. 85) in accordance with

the Federal Rules of Civil Procedure and the summary judgment standards set forth in Part II.D.ii below.

**D.     Motions for Summary Judgment**

This court's local rules require a party moving for summary judgment to set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitle[] the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). The non-moving party's response must "state the number of the paragraph in the movant's statement of material facts that is disputed" and must contain pinpoint citations to the evidence upon which the non-moving party relies. *Id*. "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id*. (emphasis omitted).

Plaintiff and Defendants have each filed Motions for Summary Judgment. (Filing Nos. 50 and 72.) Plaintiff and Defendants have also submitted statements of material facts, and responses to those facts. (*See* Filing Nos. 51, 74, and 79.) Accordingly, this matter is deemed fully submitted and the court adopts the following relevant undisputed material facts.

*i.     Relevant Undisputed Material Facts*

1.     Plaintiff Arrmon H. Daugherty is currently confined in the U.S. Penitentiary in Leavenworth, Kansas. (Filing No. 1 at CM/ECF p. 1.)

2.     At all times pertinent hereto Officer Jay Denzin ("Denzin"), Officer Derek Hose ("Hose") and Officer Robert Smith ("Smith") were law enforcement officers for the City. (Filing Nos. 73-2, 73-3, 73-4.)

3. On August 23, 2009, Plaintiff was unlawfully operating a motor vehicle in the City while under the influence of alcohol and drugs. (Filing No. 73-1 at CM/ECF p. 1.) Plaintiff was operating a motor vehicle in excess of the posted speed limits in the City. (*Id*. at CM/ECF p. 6.).

4. On August 23, 2009, plain clothes officers informed Denzin that a maroon Cadillac had accelerated through a red light and was later seen crossing the yellow center line of the street. Denzin observed the Cadillac in front of a vehicle operated by the plain clothes officers. Denzin then initiated a traffic stop. The maroon Cadillac pulled over to the side of the road. As Denzin exited his police cruiser and began approaching the maroon Cadillac, it accelerated and fled. (Filing No. 73-2 at CM/ECF pp. 2-3.)

5. After the Cadillac fled, Denzin and Hose initiated a motor vehicle pursuit. Denzin observed the Cadillac strike a parked vehicle at 32nd and Q streets, then continue northbound on 32nd Street, and then westbound onto R Street. During the pursuit, Denzin and Hose communicated their location and the Cadillac's erratic driving over the police communication radio system. Denzin and Hose also responded to questions posed by Sergeant Justin Armstrong ("Armstrong"). (Filing No. 73-2 at CM/ECF p. 3; Filing No. 73-3 at CM/ECF p. 3.)

6. On August 23, 2009, at approximately 0346 hours, Smith heard over the police communication radio system that LPD officers were initiating a traffic stop at 33rd and P streets. Smith then heard the officers initiate a pursuit of a maroon Cadillac and that the vehicle was traveling north, and then west on R Street. Smith remained at his location near 27th and R streets. Smith then observed a maroon Cadillac approach his location at a high rate of speed. (Filing No. 73-4 at CM/ECF p. 3.)

7. Smith heard the Cadillac brake sharply when it came upon a T-shaped intersection at 27th Street. Denzin and Hose observed the Cadillac's brake lights.

6

Denzin, Hose, and Smith observed the vehicle travel across 27th Street and strike a light pole. (Filing No. 73-4 at CM/ECF p. 3; Filing No. 73-2 at CM/ECF p. 3; Filing No. 73-3 at CM/ECF p. 3; Filing No. 73-1 at CM/ECF p. 2.)

8. Denzin and Hose heard Armstrong terminate the motor vehicle pursuit approximately a half of a second before the Cadillac struck the light pole. Denzin and Hose did not have an opportunity to acknowledge Armstrong's order before the Cadillac's accident occurred. (Filing No. 73-2 at CM/ECF p. 3; Filing No. 73-3 at CM/ECF p. 3.)

9. After Plaintiff's motor vehicle accident, Denzin and Hose observed Plaintiff exit the driver's side of the Cadillac and begin to flee on foot. (Filing No. 73-2 at CM/ECF p. 4; Filing No. 73-3 at CM/ECF pp. 3-4; Filing No. 73-1 at CM/ECF p. 2.)

10. Denzin and Hose pursued Plaintiff on foot. During the pursuit, Denzin gave Plaintiff loud verbal commands to stop and get down on the ground. Denzin was approximately ten feet behind Plaintiff when he observed him fall to the ground. Hose was behind Denzin and observed Plaintiff fall to the ground. (Filing No. 73-2 at CM/ECF p. 4; Filing No. 73-3 at CM/ECF pp. 3-4.)

11. It took both Denzin and Hose to secure handcuffs on Plaintiff. During this period of time, Plaintiff was verbally communicating with officers. (*Id.*)

12. Denzin observed Plaintiff to have watery, bloodshot eyes, and a strong odor of alcohol. Plaintiff had slurred speech and appeared confused. Hose conducted a search of Plaintiff and discovered a baggie of crack cocaine in his inner jacket pocket. Numerous alcohol containers were located inside the vehicle. (Filing No. 73-2 at CM/ECF p. 5; Filing No. 73-3 at CM/ECF pp. 4-5.)

13. Neither Denzin nor Hose observed Plaintiff to have any injuries. Neither Denzin nor Hose remember specifically asking if Plaintiff needed medical attention. (Filing No. 73-2 at CM/ECF p. 5; Filing No. 73-3 at CM/ECF p. 5.)

14. During the pursuit of Plaintiff, Smith was securing the perimeter. Once Plaintiff was apprehended, Smith arrived in the gravel alley where Plaintiff was being detained. Smith then transported Plaintiff to Lancaster County Corrections ("LCC").

15. Smith transported Plaintiff to LCC in a police cruiser. During the transport, Plaintiff told Smith that he needed to "take a piss" and urinated in the back of the police cruiser. (Filing No. 73-4 at CM/ECF p. 4.) Smith did not observe Plaintiff to have any injuries. Smith does not remember specifically asking if Plaintiff needed medical attention. (*Id*. at CM/ECF pp. 3-4.)

16. At LCC, Denzin processed Plaintiff for driving under the influence. During this process, Denzin and Hose found Plaintiff to be uncooperative. Plaintiff was also combative with LCC staff and had to be handcuffed. (Filing No. 73-2 at CM/ECF pp. 5-6.)

17. During processing, Denzin read Plaintiff a Post Arrest Chemical Test Advisement, gave him three separate chances to sign, and Plaintiff refused. Denzin presented an Intoxilyzer 5000 EN mouthpiece to Plaintiff and instructed Plaintiff to make a long steady blow into the tube. Plaintiff refused to blow into the tube. Denzin read a verbal notice of revocation to Plaintiff, asked Plaintiff to sign, and Plaintiff refused. Denzin read a Physician's advisement form and a Miranda form to Plaintiff. Plaintiff refused to answer the Miranda form questions. Denzin also tried to take a picture of Plaintiff. However, Plaintiff hid his face and would not allow Denzin to take his picture. (*Id*.)

18. While incarcerated at LCC, Plaintiff had access to medical care. (Filing No. 73-1 at CM/ECF p. 5.)

8

19. In October 2009, Plaintiff sought medical attention from LCC staff for a bacterial infection. (Filing No. 73-1 at CM/ECF p. 5, Filing No. 73-5.) Plaintiff was also treated for a sinus infection, and a prescription was obtained for blood pressure medication at Walgreens. (Filing No. 73-5 at CM/ECF p. 5.)

20. On October 16, 2009, prior to being transferred to the Butler County Sheriff's Office for housing in the jail, an LCC nurse noted in Plaintiff's file that he could not be prescribed non-steroidal anti-inflammatory drugs (NSAID) due to his hypertension. In the file, there are no notations that Plaintiff complained of back or neck pain. (*Id*.)

21. On October 16, 2009, Plaintiff completed and signed an intake medical screening at Butler County Sheriff's Office ("jail"). Plaintiff did not indicate that he had any medical problems other than being allergic to penicillin. (Filing No. 73-6 at CM/ECF p. 1-4.)

22. On October 17, 2009, Plaintiff sought medical attention from Butler County Sheriff's Office staff. Plaintiff complained of sinus problems and headaches, and questioned why he was not receiving his blood pressure medication. (*Id*. at CM/ECF p. 7.)

23. On October 21, 2009, Plaintiff alleged he was being denied medical attention by Butler County Sheriff's Office staff because he had not been given medication that he had been taking on the "streets." (*Id*. at CM/ECF pp. 8-9.)

24. On November 4, 11, and 22, of 2009, Plaintiff sought medical attention from Butler County Sheriff's Office staff for sinus-related issues. (*Id*. at CM/ECF pp. 10-12.)

9

25. On December 30, 2009, Plaintiff completed and signed an intake medical screening at Butler County Sheriff's Office. Plaintiff indicated several medical issues, but did not identify any neck or back pain. (*Id*. at CM/ECF pp. 1-2, 5-6.)

26. In January 2010, Plaintiff sought medical attention from LCC staff for dental issues. (Filing No. 73-1 at CM/ECF p. 6; Filing No. 73-1 at CM/ECF p. 5.)

27. On January 19, 2010, Plaintiff requested eye glasses from an LCC nurse. On January 21, 2010, Plaintiff received an eye exam and a medical doctor examined him the next day. (Filing No. 73-1 at CM/ECF p. 5.)

28. On February 11, 2010, Plaintiff received a dental x-ray. Five days later, a dentist visited with Plaintiff. (*Id*. at CM/ECF p. 6.)

29. In March 2010, Plaintiff sought medical attention from LCC staff for pain to his back and neck. (Filing No. 73-1 at CM/ECF p. 5.) On March 15, 2010, Plaintiff complained of sharp pain in his neck and back, and requested to go to the hospital. Plaintiff claimed that the pain was so intense he could not get out of bed. Plaintiff informed the medical provider that he was in a car accident when he was arrested and was never taken to the hospital. Plaintiff was provided with over-the-counter medication for his pain. (Filing No. 73-5 at CM/ECF p. 6.)

30. On March 22, 2010, Plaintiff sought medical attention from LCC staff. Plaintiff requested a new supply of over-the-counter medication for his neck and back pain. Progress notes indicate that Plaintiff denied numbness or tingling. LCC staff gave Plaintiff more oral medication as well as an arthritis cream. He also received exercise education sheets. (*Id*. at CM/ECF p. 6.)

31. On March 29, 2010, Plaintiff sought medical attention from LCC staff. Plaintiff claimed he suffered injuries caused by a motor vehicle accident and complained of numbness in his left foot and pain radiating down his back. The

10

medical examination indicated Plaintiff had a full range of motion, no impairment to his gait, no numbness in left foot, normal hand grasp and foot strength. Plaintiff's over-the-counter medications were continued and he was advised to continue stretching. (*Id*. at CM/ECF pp. 6-7.)

32. On March 31, 2010, Plaintiff sought medical attention from LCC staff for neck and back pain. A medical doctor increased Plaintiff's oral over-the-counter medication, and advised Plaintiff to increase his stretching and strengthening exercises. (*Id*. at CM/ECF p. 7.)

33. On April 7, 2010, Plaintiff sought medical attention from LCC staff. Plaintiff continued to complain about discomfort. The medical provider noted Plaintiff was only doing the directed exercises once per week and it could take a while to see results. (*Id*. at CM/ECF pp. 7-8.)

34. On April 15, 2010, Plaintiff sought medical attention from LCC staff, requesting more over-the-counter medication and said he was completing his exercises. (*Id*. at CM/ECF p. 8.)

35. On April 21, 2010, Plaintiff sought medical attention from LCC staff. Plaintiff requested over-the-counter medication for his neck and back pain. (*Id*.)

36. On April 30, 2010, Plaintiff sought medical attention from Saline County Law Enforcement Center staff. Plaintiff stated that he felt neck and back pain and that his left hand and foot were going numb. A Saline County Law Enforcement Center nurse visited with Plaintiff on May 5, 2010. During the visit, Plaintiff stated that his neck and back pain has existed since his motor vehicle accident in August 2009. A medical doctor examined Plaintiff on May 6, 2010, and gave him a prescription for a muscle relaxer and a nonsteroidal anti-inflammatory drug. (Filing No. 73-7 at CM/ECF pp. 1, 4-5, 16.)

11

37. On July 26, 2010, a doctor at the Bureau of Federal Prisons Health Services cleared Plaintiff to perform Food Service duties. The medical duty status indicates that Plaintiff had no restrictions. (Filing No. 73-8 at CM/ECF p. 3.)

38. On August 5, 2010, Plaintiff underwent a radiologic consultation of his cervical spine. The results of the consultation were negative. (Filing No. 73-8 at CM/ECF p. 6.)

39. On September 17, 2010, Plaintiff completed and signed a medical intake form provided by the Saline County Law Enforcement Center. Plaintiff reported that he had been previously shot in the left shoulder area, and in both legs. (Filing No. 73-7 at CM/ECF pp. 2, 22-24.)

40. On September 21, 2010, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for his back. Plaintiff claimed he was awaiting approval for an MRI. (*Id*. at CM/ECF pp. 2, 6, 20.)

41. On September 22, 2010, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for allergies. (*Id*. at CM/ECF pp. 2, 8.)

42. On September 30, 2010, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for back pain. (*Id*. at CM/ECF pp. 2, 17.)

43. On November 3, 2010, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for neck and back pain. Plaintiff also requested to be assigned to a bottom bunk and indicated jumping up and down was causing back pain. (*Id*. at CM/ECF pp. 2, 10.)

44. On November 4, 2010, the Plaintiff asked Saline County Law Enforcement Center staff for a bottom bunk because of neck and back pain from a motor vehicle accident. Saline County staff records indicate Plaintiff was given an

opportunity to move to a bottom bunk, but he declined the move. (*Id*. at CM/ECF pp. 2, 11.)

45. On December 16, 2010, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for pain in his knee, neck, and back. (*Id*. at CM/ECF pp. 2, 12.)

46. On December 17, 2010, Plaintiff was involved in a fight at the Saline County Law Enforcement Center, and suffered multiple contusions to his face. Plaintiff received a CT scan of his facial bones at the Crete Area Medical Center. (*Id*. at CM/ECF pp. 2, 25.)

47. On December 19, 2010, Plaintiff requested to remain in segregation for medical/personal reasons. He also requested a bottom bunk because he hurt his knee and hip in the fight that occurred on December 17, 2010. Plaintiff further stated that his neck and back pain had increased since the fight. (*Id*. at CM/ECF pp. 2, 13.)

48. On January 31, 2011, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for nasal issues. (*Id*. at CM/ECF pp. 2, 14.)

49. In February and March 2011, Plaintiff sought medical attention from Saline County Law Enforcement Center staff for nasal issues and pain in his back when blowing his nose. (*Id*. at CM/ECF pp. 2, 15, 26.)

50. On November 15, 2011, a radiologist x-rayed Plaintiff's chest for possible sarcoidosis and the results were negative. (Filing No. 73-8 at CM/ECF p. 11.)

51. On November 17, 2011, Plaintiff sought medical attention from Bureau of Prisons Health Services staff for neck pain. Plaintiff was advised to buy Motrin from the commissary. (*Id*. at CM/ECF pp. 12-13.)

52. On December 1, 2011, Federal Bureau of Prisons Health Services staff cleared Plaintiff to work in food service. (*Id*. at CM/ECF pp. 14-15.)

### ii. *Standard of Review*

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). After the movant has demonstrated the absence of a genuine issue of material fact, the nonmovant must respond by submitting evidence that sets out specific facts showing that there is a genuine issue for trial. *Id*. In doing so, the nonmovant must substantiate her allegations with "sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. "The basic inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Jackson*, 643 F.3d at 1085 (quoting *Torgerson*, 643 F.3d at 1042).

### iii. *Defendants' Motion for Summary Judgment*

Defendants argue that, among other things, they are entitled to summary judgment because (a) the individual Defendants are entitled to qualified immunity, and (b) because Plaintiff has failed to show that a policy or custom was the moving force behind his injuries. The court agrees.

14

      a.      Qualified Immunity

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether an official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). A court "may consider these factors in either order." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011). With these factors in mind, the court now turns to Plaintiff's claims.

Here, Plaintiff alleges that on August 23, 2009, he was driving a vehicle at speeds up to 60 miles per hour while being pursued by the LPD. (Filing No. 1 at CM/ECF p. 5.) During the pursuit, Plaintiff hit a light pole, exited the vehicle, and

15

alleges that he ran approximately ten yards before he fell to the ground unconscious. (*Id.*) After Plaintiff fell, Denzin took him into custody. (*Id.* at CM/ECF pp. 8-9.) Plaintiff alleges he informed Denzin and Hose that he needed medical attention, but they refused to seek or provide it for him. (*Id.* at CM/ECF pp. 5-6.) Plaintiff asserts that he sustained a *minor* concussion, lost feeling in his limbs, and now experiences chronic neck and back pain. (*Id.* at CM/ECF pp. 8-9 (emphasis added).) Plaintiff argues Denzin and Hose violated his constitutional rights by failing to provide him with adequate medical care. (Filing No. 79 at CM/ECF pp. 11-17.)

In contrast, Denzin and Hose assert that they did not observe Plaintiff to have any injuries. (Filing No. 73-2 at CM/ECF p. 5; Filing No. 73-3 at CM/ECF p. 5.) Rather, Denzin observed Plaintiff to have watery, bloodshot eyes, and a strong odor of alcohol. (Filing No. 73-2 at CM/ECF p. 5; Filing No. 73-3 at CM/ECF pp. 4-5.) Plaintiff was able to communicate with Denzin and Hose, but his speech was slurred. (*Id.*) Hose also discovered a baggie of crack cocaine in Plaintiff's inner jacket pocket along with numerous alcohol containers inside his vehicle. (*Id.*)

At the time of the alleged constitutional violation, Plaintiff was a pretrial detainee. Pretrial detainees' rights arise under the due process clause of the Fourteenth Amendment. *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999), *cert. denied*, 528 U.S. 1157 (2000). Although a pretrial detainee's claim for denial of medical care is brought under the due process clause, such claims are analyzed in much the same way as a prisoner's Eighth Amendment claim of deliberate indifference to a serious medical need. *Id*. Under the Eighth Amendment, a prisoner-plaintiff seeking relief for claims relating to his medical care must allege that a defendant-prison official was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Further, a plaintiff must allege that he had objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn*, 491 F.3d 394, 396–97 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 972–73 (8th Cir. 2006). "[S]ociety does not expect that

16

prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. (citing *Estelle*, 429 U.S. at 103–04).

The evidence in this matter shows that after Plaintiff was processed for driving under the influence, he was housed at LCC from the day of his arrest, August 23, 2009, until October 16, 2009. (Filing No. 73-1 at CM/ECF p. 5.) At LCC, Plaintiff had access to medical care. (Filing No. 73-1 at CM/ECF p. 5; Filing No. 73-5.) However, medical records indicate that Plaintiff failed to seek medical attention until October 7, 2009, or more than a month after the accident occurred. (*Id*.) When he finally did seek medical attention, Plaintiff did so for a bacterial infection and sinus infection, not for a concussion, loss of feeling in his limbs, or neck and back pain. (*Id*.)

Plaintiff argues that he asked for medical attention with regard to his head injury several times at LCC and that his requests were not documented. (*See* Filing No. 79 at CM/ECF p. 11.) However, this argument is contradicted by other undisputed medical evidence in the record. Indeed, Plaintiff completed and signed intake medical screening forms for the Butler County Sheriff's Office in October 2009 and December 2009. (Filing No. 73-6 at CM/ECF pp. 1-4.) On these forms, Plaintiff did not indicate that he had a concussion, head injury, loss of feeling in his limbs, or back and neck pain. (*Id*.)

In short, the evidence in this matter does not show that Plaintiff was *ever* diagnosed with a concussion. Moreover, even if Plaintiff did experience a minor concussion, or otherwise experienced a head injury in the accident, he has not shown that a layperson would have recognized that he needed medical attention. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (stating a serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's

17

attention) (quotations omitted)). In light of this, the court finds that no reasonable juror could conclude that Denzin and Hose violated Plaintiff's constitutional rights. Denzin and Hose are entitled to qualified immunity for Plaintiff's Fourteenth Amendment claims against them in their individual capacities.

### b. Municipal Policy

Because the court has dismissed Plaintiff's Fourteenth Amendment claims against Denzin and Hose in their individual capacities, the court now turns to Plaintiff's claims against Denzin and Hose in their official capacities and Plaintiff's claims against the City. Plaintiff's claims against Denzin and Hose in their official capacities are actually claims against their employer, the City. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

The City, as a municipality, may only be liable under section 1983 if its official "policy" or "custom" caused a violation of the plaintiff's constitutional rights. *Doe By & Through Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental custom, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

18

3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

As discussed above, Plaintiff has not shown that Denzin and Hose violated his constitutional rights. In addition, Plaintiff has not shown that the City had an unconstitutional policy or that any policymaking officials were deliberately indifferent to or tacitly authorized any unconstitutional conduct. Accordingly, the City is also entitled to summary judgment.

    iv.   *State Law Claims*

Plaintiff has also alleged state law claims for negligence. The court declines to exercise supplemental jurisdiction over such claims because it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). However, the court will dismiss Plaintiff's state law claims without prejudice to reassertion in the proper forum.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion to Compel (filing no. 67) is denied.

2. Defendants' Objection (filing no. 81) is denied in accordance with this Memorandum and Order.

3. Plaintiff's Motion to Strike (filing no. 82) is denied.

4. Plaintiff's Motion for Leave to Supplement (filing no. 84) is granted.

19

5. Defendants' Motion for Summary Judgment (filing no. 72) is granted and Plaintiffs' federal claims are dismissed with prejudice. Plaintiff's state law claims are dismissed without prejudice.

6. Plaintiff's Motion for Summary Judgment (filing no. 50) and Objection to Defendants' Motion for Summary Judgment (filing no. 79) are denied.

7. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 25th day of March, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.